UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DAVID ALLEN WAYNE,

        Plaintiff,                     Case No. 2:07-cv-62

v.                                                   Honorable R. Allan Edgar

JOHN PERRY, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On May 14, 2007, this Court ordered service of Plaintiff's complaint on Defendants. On July 9, 2007, Defendants filed a motion to dismiss (docket #39) on the ground that Plaintiff failed to exhaust his available administrative remedies. However, because Defendants have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b). Plaintiff filed a response (docket #51) and affidavit (docket #52) on or about September 4, 2007. Upon review, I recommend that Defendants' motion for summary judgment be granted.

### Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

2

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, he sues Defendants Resident Unit Officer John Perry, Resident Unit Officer Keith Erkkila and Warden Greg McQuiggin. In Plaintiff's complaint, he alleges that Defendants Perry and Erkkila have threatened him for his use of the grievance process. Plaintiff claims that Defendants "over the holidays went for days without feeding" him. Plaintiff states that on February 6, 2007, Defendant Perry asked Plaintiff if he wished to get his hair cut, but then suddenly told the porter to stop cutting Plaintiff's hair, punched Plaintiff in the face, and slammed him to the ground. Defendants Perry and Erkkila then kicked Plaintiff in the face. Plaintiff contends that Defendants believed that he was "living a gay lifestyle" and have falsified documents to make it appear that he was refusing meals or being disruptive. Plaintiff also claims that Defendants broke two windows "over the holidays" in an attempt to have him placed on suicide watch. Plaintiff alleges that Defendants have told other inmates to bang on his walls so that he cannot do legal work. Plaintiff speculates that Defendants are putting poison in his food and water because his writing is sloppy and he believes he is being affected by some poison.

In addition, Plaintiff has filed a motion to amend his complaint in which he adds claims against Assistant Resident Unit Supervisor Thomas Perttu, Resident Unit Manager Terri Smith, and Resident Unit Officer James Dingledey. According to Plaintiff's amended complaint,

Defendant Dingledey attempted to poison him and that Defendants Perttu and Smith had prior knowledge of the attempt and did nothing to prevent it.  In addition, Defendants Perttu, Smith, and Dingledey were aware of the assault by Defendants Perry and Erkkila.  Plaintiff states that he gave Defendant Smith a kite regarding the attempts to poison him, but that no one checked to see if Plaintiff's allegations were true.  Plaintiff alleges that Defendants Perttu and Smith "fixed" the paperwork in an attempt to cover up a conspiracy in grievances as well as other paperwork.  Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## Discussion

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

In their brief in support of the motion for summary judgment, Defendants state that Plaintiff did not exhaust his administrative remedies prior to filing his complaint in this case. The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.* Defendants state that because Plaintiff filed his complaint before he completed the grievance process, it should be dismissed.

In support of their motion, Defendants offer copies of a grievance inquiry for Plaintiff, as well as the affidavit of James Armstrong, who is employed by the MDOC as Manager of Prisoner Grievance and Appeals Section. According to these documents, Plaintiff filed two grievances addressing the issues raised in his complaint. These grievances included AMF-07-01-0064-17A, which was filed at step I on January 4, 2007, and the step III appeal was received by the MDOC on March 27, 2007. The second grievance was AMF-07-02-00476-26A, which was filed at step I on February 9, 2007, and the step III appeal was received by the MDOC on April 30, 2007. (*See* Defendants' Exhibits 1 and 2, docket #40 and #52.) At Step III, the Prisoner Affairs Section of the

Department of Corrections is responsible for responding. *Id.* ¶ GG.  Policy requires that no more than ninety calendar days may elapse from the filing of the Step I grievance to the Step III response. *Id.* ¶ U.  In this case, the period was completed on April 3, 2007 for AMF-07-01-0064-17A, and on May 8, 2007 for AMF-07-02-00476-26A.

Plaintiff did not wait to receive his response at step III before filing the instant action. As noted above, Plaintiff is required to wait until the grievance process has been completed before he files an action in federal court.  Plaintiff failed to wait for his step III responses to the grievances, nor did he wait 90 days for the process to be completed.  The grievance inquiry shows no other grievances filed during the pertinent time period in this case.  Therefore, Defendants have met their burden of showing that Plaintiff failed to comply with the exhaustion requirement.  Moreover, because the claims raised in the amended complaint arose at the same time as those in the original complaint, the attachments to Defendants' motion show that Plaintiff has failed to exhaust his claims against Defendants Perttu, Smith and Dingleday.

### Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #39) be granted and that Plaintiff's complaint be dismissed in its entirety.

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   February 25, 2008

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).